UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nigeria Lee Harvey,<br><br>  Plaintiff,<br><br>v.<br><br>Minnesota Department of Corrections, Paul Schnell, Michelle Smith, Guy Bosch, Lisa Stenseth, Victor Wanchena, Andrew Reed, Brianna Erickson, Marrisa Williams, Monica Arons, Lynn Noll, Nanette Larson, Tina Sneen, and Centurion of Minnesota, LLC,<br><br>  Defendants. | Case No. 21-cv-346 (WMW/JFD)<br><br>REPORT AND RECOMMENDATION |

This matter is before the Court on four motions: (1) Defendant Centurion of Minnesota, LLC's Motion to Dismiss (Dkt. No. 30); (2) Defendants Minnesota Department of Corrections, Paul Schnell, Michelle Smith, Guy Bosch, Lisa Stenseth, Victor Wanchena, Andrew Reed, Brianna Erickson, Marrisa Williams, Monica Arons, Lynn Noll, Nanette Larson, and Tina Sneen's Motion for Summary Judgment (Dkt. No. 61); (3) Plaintiff Nigeria Lee Harvey's Motion for Temporary Restraining Order (Dkt. No. 68); and (4) Defendant Centurion of Minnesota, LLC's Motion for Joinder to the DOC Defendants' Motion for Summary Judgment (Dkt. No. 71).[1] For the reasons set forth below, the Court

---

[1] Plaintiff Nigeria Lee Harvey's Motion for Summary Judgment (Dkt. No. 40) was addressed in an earlier Report and Recommendation (Dkt. No. 48), and two subsequent motions filed by Plaintiff (Dkt. Nos. 49 and 53) comprise or relate to Plaintiff's objections to the earlier Report and Recommendation. Accordingly, the Court does not address those

recommends granting in part and denying in part Defendant Centurion of Minnesota, LLC's Motion to Dismiss; granting Defendants Minnesota Department of Corrections, Paul Schnell, Michelle Smith, Guy Bosch, Lisa Stenseth, Victor Wanchena, Andrew Reed, Brianna Erickson, Marrisa Williams, Monica Arons, Lynn Noll, Nanette Larson, and Tina Sneen's Motion for Summary Judgment; denying Plaintiff Nigeria Lee Harvey's Motion for Temporary Restraining Order; and granting Defendant Centurion of Minnesota, LLC's Motion for Joinder to the DOC Defendants' Motion for Summary Judgment.

Plaintiff Nigeria Lee Harvey represents himself in this matter. Bradley Simon, Esq., represents Defendants Minnesota Department of Corrections, Paul Schnell, Michelle Smith, Guy Bosch, Lisa Stenseth, Victor Wanchena, Andrew Reed, Brianna Erickson, Marrisa Williams, Monica Arons, Lynn Noll, Nanette Larson, and Tina Sneen. Anthony J. Novak, Mark A. Solheim, and Monica Detert, Esqs., represent Defendant Centurion of Minnesota, LLC.

## I. Background

Plaintiff Nigeria Lee Harvey ("Plaintiff") is suing Defendants Minnesota Department of Corrections ("DOC"), Paul Schnell, Michelle Smith, Guy Bosch, Lisa Stenseth, Victor Wanchena, Andrew Reed, Brianna Erickson, Marrisa Williams, Monica Arons, Lynn Noll, Nanette Larson, and Tina Sneen (collectively, "DOC Defendants") pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth and Fourteenth Amendment rights. Plaintiff also asserts a failure-to-properly-train-and-supervise claim

filings in this Report and Recommendation.

against Centurion of Minnesota, LLC ("Centurion"). The operative pleading is the Amended Complaint (Dkt. No. 10), but the Court has also considered allegations in the original Complaint (Dkt. No. 1), because the Amended Complaint omitted (possibly inadvertently) the first ten pages of the original Complaint.

Plaintiff alleges that an inmate in Cell Hall D at the Minnesota Correctional Facility-Stillwater ("MCF-Stillwater") tested positive for COVID-19 on September 30, 2020. (Compl. at 12, Dkt. No. 1.) All inmates in Cell Hall D were placed on modified lockdown, but were allowed to shower and use the phone every few days. (*Id.*) Testing over the next ten days revealed a high rate of infection. (*Id.*) Defendants Schnell, Smith, Bosch, Stenseth, Wanchena, Reed, Erickson, Williams, Arons, Noll, Larson, and Sneen allegedly did not move or isolate any of the inmates who tested positive. (*Id.*; Am. Compl. at 2, Dkt. No. 10.) When Plaintiff questioned this decision, a prison staff member told him to wear a mask and maintain social distancing. (Compl. at 12.) The doors to the living units in Cell Hall D are made of bars through which air flows freely. (*Id.* at 13.)

Believing his health was in imminent danger, Plaintiff wrote a letter to the DOC Central Office on October 15, 2020, citing his concerns over the COVID-19 outbreak and the facility's response. (*Id.* at 5, 13; *see* Brown Decl. Ex. B, Dkt. No. 63-1.) MCF-Stillwater Warden Guy Bosch responded via a written "Kite Response" to Plaintiff on November 9, 2020, describing MCF-Stillwater's response to the pandemic. (Compl. at 5.) Prisoners who tested positive for COVID-19 were not separated from the other inmates, however. (*Id.* at 13.)

Plaintiff tested positive for COVID-19 on October 18, 2020. (*Id.*) He suffered appetite loss, fatigue, hot and cold flashes, loss of taste and smell, coughing, and headaches. (*Id.*) A nurse told him to drink water, lie down, and rest. (*Id.*) Plaintiff never saw a doctor. (*Id.*)

Plaintiff alleges that Centurion and the DOC are "municipal corporations" responsible for the medical personnel at MCF-Stillwater and are tasked with properly aiding and assisting prisoners with their illnesses and essential needs. (*Id.* at 14.) He contends that Centurion and the DOC failed to properly train and supervise the prison doctors and nurses on treating and preventing COVID-19. (*Id.*) Plaintiff believes prisoners who tested positive for COVID-19 should have been moved away from other inmates. (*Id.*) He claims the nurse who advised him to drink water, lie down, and rest demonstrated deliberate indifference to his medical needs. (*Id.*) Plaintiff contends the DOC is responsible for the conduct of all the prison officials named as Defendants, who showed deliberate inference and recklessness in violation of the Eighth and Fourteenth Amendments. (*Id.*)

Plaintiff claims he has not regained his full senses of taste and smell. (*Id.*) He faults Defendants for not closely monitoring his heart, lung, kidney, liver, and brain function. (*Id.*) Plaintiff further alleges that Defendants Schnell, Smith, Bosch, Stenseth, Wanchena, Reed, Erickson, Williams, Arons, Noll, Larson, and Sneen failed to properly monitor, test, and screen prison officials to ensure none introduced COVID-19 to the inmate population. (*Id.* at 15; Am. Compl. at 5.)

## II.     DOC Defendants' Motion for Summary Judgment

The DOC Defendants requested and received permission to file an early motion for summary judgment on the limited issue of whether Plaintiff exhausted his administrative remedies. (Dkt. No. 50.) The DOC Defendants filed their limited summary judgment motion on September 2, 2021. (Dkt. No. 61.) Centurion asks to join in the DOC Defendants' motion. (Dkt. No. 71.)

### A.     Relevant Facts

Minnesota Department of Corrections Policy No. 303.100 ("Grievance Procedure") describes a three-step administrative grievance procedure for offender complaints. (Brown Decl. ¶ 2, Dkt. No. 63; Spies Decl. Ex. A at 1, Dkt. No. 64-1.) The inmate must first attempt an informal resolution by sending a kite to the appropriate staff person at the prison. (Brown Decl. ¶ 3; Spies Decl. Ex. A at 2.) If the issue is not resolved informally, there are two ways an inmate can proceed. First, the inmate can file a formal grievance with the facility's grievance coordinator. (Brown Decl. ¶ 4; Spies Decl. Ex. A at 2.) If the issue is not resolved there, the inmate may then file a grievance appeal with the DOC's grievance appeal authority at the Central Office. (Brown Decl. ¶ 5; Spies Decl. Ex. A at 5.)

Second, some inmates are allowed to bypass the requirement to file a formal grievance with the facility's grievance coordinator.

> Offenders who have received threats to their physical safety or well-being, or who can establish that they would be in danger if their complaint were to be known at the facility, may submit their facility grievance on the Facility Grievance form directly to the department grievance appeal authority at central office in a sealed envelope marked "Special Mail."

(Spies Decl. Ex. A at 3 ("DOC Policy 303.100(C)(2)(b)").) According to DOC grievance appeal coordinator Morgan Brown and DOC program director and grievance policy chair Jeffrey Spies, the exception provided in DOC Policy 303.100(C)(2)(b) applies only when the inmate has been threatened by another person or can establish that he would be in danger if staff at the facility knew about the grievance. (Brown Decl. ¶ 6; Spies Decl. ¶ 7.) The purpose of the exception is to accommodate a "legitimate fear of retaliation," not to "permit an incarcerated individual to bypass the standard grievance process due to a generalized concern about health or safety, such as with the COVID-19 pandemic." (Spies Decl. ¶ 7.)

Plaintiff mailed a letter dated October 15, 2020, to the Central Office, asking for an investigation of how MCF-Stillwater was handling the COVID-19 outbreak and for a directive to MCF-Stillwater to require inmates who tested positive to isolate from other inmates. (Brown. Decl. Ex. B.) The letter cites to the DOC policy that allows an inmate to bypass the second step and file a grievance appeal directly with the Central Office, and uses terms found in DOC Policy 303.100(C)(2)(b) such as "threat[en]ing," "well being," and "physical safety." (Brown Decl. Ex. B.) Plaintiff further claims in the letter that the situation "justif[ies] direct communication to Central Office, without engaging or exhausting the chain of command at all, when my well being[] and health is in imminent danger" and cites directly to "Policy – 303:100, para. (c)(2)(B)." (Brown Decl. Ex. B.)

Morgan Brown received and reviewed Plaintiff's letter. (Brown Decl. ¶ 11.) The letter was not submitted in a sealed envelope marked "Special Mail," was not submitted on the Facility Grievance form, and was not considered a grievance or grievance appeal.

6

(Brown Decl. ¶ 12 & Ex. B.) Morgan Brown did not interpret the letter to claim that Plaintiff had received a threat to his physical safety or well-being or establish that he would be in danger if his complaint became known. (Brown Decl. ¶ 13.) The letter therefore was not processed as a grievance under DOC Policy 303.100(C)(2)(b), but was routed to MCF-Stillwater Warden Bosch for a response. (Brown Decl. ¶ 12.) Jeffrey Spies also reviewed Plaintiff's letter and agreed the exception to the standard grievance process provided by DOC Policy 303.100(C)(2)(b) did not apply to Plaintiff's COVID-19 health and safety concerns. (Spies Decl. ¶ 10.)

Warden Bosch responded to Plaintiff on November 9, 2020, via a "Kite Response," and described the DOC's and MCF-Stillwater's COVID-19 preventative and protective measures. (Compl. at 5–6.) Warden Bosch encouraged Plaintiff to communicate his medical needs directly to health services staff. (*Id.* at 6.) There is no record that Plaintiff followed up with health services staff or filed any other formal or informal grievance. (Wanchena Decl. ¶ 10, Dkt. No. 65.)

### B. Legal Standards

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). Materiality is determined by the applicable substantive law. *Id.* at 248 ("Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment."). A dispute is "genuine" if the evidence would support a reasonable jury's verdict for the nonmovant. *Id.* The Court views the evidence and draws all reasonable inferences in the nonmovant's favor. *Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).

A prisoner must exhaust administrative remedies before filing a lawsuit under 42 U.S.C. § 1983 related to prison conditions: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is "to reduce the quantity and improve the quality of prisoner suits" by giving "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). Exhaustion is mandatory. *Id.* at 524; *see Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory.").

### C. Discussion

The DOC Defendants argue that Plaintiff failed to follow the Grievance Procedure and thus his claims are not exhausted and must be dismissed. Plaintiff does not dispute that he did not a formal grievance with the prison's grievance coordinator or a grievance appeal at the Central Office. He contends, however, that he complied with DOC Policy 303.100(C)(2)(b), as he interpreted it.

8

The Court finds that Plaintiff's letter of October 15, 2020 did not comply with DOC Policy 303.100(C)(2)(b) or qualify as an exception to the standard Grievance Procedure. Most notably, Plaintiff did not show that he had been threatened, had a legitimate fear of retaliation, or would be in danger if prison staff knew about the grievance. It is clear from the words and phrases used in Plaintiff's letter that he was aware of and was attempting to proceed under DOC Policy 303.100(C)(2)(b). However, that policy unambiguously states that the exception is available only to inmates "who have received threats"—meaning they were the recipient of a threat made by another—or "would be in danger if their complaint were to be known at the facility"—meaning another person's knowledge of the complaint would endanger the inmate. The policy cannot reasonably be read to include threats to an inmate's health or safety caused by COVID-19. The exception applies when an inmate can establish that a prison official or staff member has threatened him or that he would be in danger if a prison official or staff member knew about his grievance. Therefore, the exception was not available to Plaintiff.

Plaintiff suggests that prison officials could threaten a prisoner's physical safety or well-being by demonstrating deliberate indifference to their health and safety and placing inmates who tested positive for COVID-19 with inmates who were not infected. (Pl.'s Obj'n to DOC Defs.' Mot. Summ. J. at 2, Dkt. No. 72.) If prison officials were placing, or threatening to place, inmates together for the purpose of exposing them to COVID-19, the Court agrees that conduct could qualify as an exception under DOC Policy 303.100(C)(2)(b). But that is not what Plaintiff claimed in his letter, nor has he produced

any evidence of such conduct or intent in opposition to the DOC Defendants' summary judgment motion.

Plaintiff's October 15, 2020 letter also was not submitted on a Facility Grievance form or in a sealed envelope marked "Special Mail," as required by DOC Policy 303.100(C)(2)(b). Plaintiff argues that he should not be penalized for these deficiencies because he was in modified quarantine lockdown and had access to grievance forms and other materials only every few days. In essence, Plaintiff argues that administrative remedies were not "available" to him.

An inmate must exhaust only "'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). There are three narrow circumstances where administrative remedies may not be available to an inmate: "(1) when the procedure would be a 'dead end' because officers are unable or unwilling to provide relief; (2) when the procedure is so opaque as to become 'incapable of use'; and (3) when prison officials prevent a prisoner from utilizing the procedure through 'machination, misrepresentation, or intimidation.'" *Rodd v. LaRiva*, 515 F. Supp. 3d 1006, 1012 (D. Minn.) (quoting *Ross*, 136 S. Ct. at 1859–60), *aff'd as modified*, 859 F. App'x 18, 2021 WL 4258766 (8th Cir. 2021). Plaintiff has submitted an affidavit attesting that between October 11 and 14, 2021,[2] he asked for kites and grievance forms several times, but correctional officers refused his requests and said he would be allowed to leave his cell and

---

[2] Presumably Plaintiff meant the year 2020.

get those materials in a few days.³ (Harvey Aff., Dkt. No. 73.) To the extent a Facility Grievance form was not provided to Plaintiff between October 11 and 14, 2020, a temporary delay in receiving necessary grievance forms may be an inconvenience but does not necessarily prevent an inmate from later submitting the proper forms. *See Gonzalez v. Bendt*, 971 F.3d 742, 746 (8th Cir. 2020).

To that point, Plaintiff has not shown he was prevented from complying with the Grievance Procedure after October 14, 2020. The letter Plaintiff ultimately sent to the Central Office was dated October *15*, 2020, and he has not argued or shown that he requested or was refused a Facility Grievance form on or after that date. Plaintiff filed this action on February 4, 2021. He could have exhausted his administrative remedies in conformance with the Grievance Procedure between October 15, 2020 and February 4, 2021. *See Gonzalez*, 971 F.3d at 746 (noting exhaustion of available remedies must occur before seeking judicial relief). Therefore, Plaintiff has not shown the Grievance Procedure was not available to him such that he could not have exhausted his administrative remedies before filing this lawsuit.

What is more, the Central Office did not simply return Plaintiff's letter to him. The letter was forwarded to Warden Bosch at MCF-Stillwater for a response. Warden Bosch

---

³ Because the Court views all of the evidence in Plaintiff's favor, the Court does not consider contradictory evidence from the DOC Defendants provided in Victor Wanchena's Second Declaration (Dkt. No. 76). For example, Associate Warden Wanchena averred that inmates in Cell Hall D were allowed to leave their cells on October 12, 13, and 14, 2020, and that Plaintiff "would have had the opportunity to obtain blank kites and grievance forms at that time." (Wanchena Second Decl. ¶ 7.) Associate Warden Wanchena also attested that Plaintiff "could have requested those forms from any DOC staff member, and they would have been delivered to him at his cell." (*Id.* ¶ 10.)

responded in a communication titled "Kite Response," thereby indicating he and the DOC considered the letter an attempt to informally resolve a grievance. Plaintiff was therefore on notice that the DOC did not consider his letter to qualify as an exception to the Grievance Procedure pursuant to DOC Policy 303.100(C)(2)(b) and that he needed to complete the second and third steps of the standard Grievance Procedure by filing a formal grievance with the facility's grievance coordinator and then a grievance appeal with the Central Office.

Plaintiff next argues the Grievance Procedure did not clearly explain how to address COVID-19 concerns. By its terms, the Grievance Procedure applies to *all* inmate complaints. This includes complaints related to COVID-19. The lack of a COVID-19-specific grievance procedure did not render administrative remedies unavailable.

Finally, Plaintiff contends the prison's grievance procedures "are utterly incapable of responding to a rapidly spreading pandemic like [COVID]-19." (Pl.'s Obj'n to DOC Defs.' Mot. Summ. J. at 5 (citing *Valentine v. Collier*, 140 S. Ct. 1598 (2020) (statement of Sotomayor, J.)).) This unsupported argument does not establish that the DOC's grievance system "cannot or will not respond to an inmate's complaint." *Valentine*, 140 S. Ct. at 1598. Therefore, it is inadequate to defeat the DOC Defendants' motion for summary judgment.

### D. Recommendation

Plaintiff did not exhaust his administrative remedies for the claims asserted in this case, and dismissal without prejudice is mandatory. The Court therefore recommends that the DOC Defendants' motion for summary judgment be granted and Plaintiff's claims

against the DOC Defendants be dismissed without prejudice. The Court further recommends that Centurion's motion to join in the DOC Defendants' motion be granted and that Plaintiff's claims against Centurion also be dismissed without prejudice.

### III. Centurion's Motion to Dismiss

On May 4, 2021, Centurion filed a motion to dismiss all claims against it pursuant to Federal Rules of Civil Procedure 8 and 12 and for Plaintiff's failure to submit an affidavit of expert review required by Minnesota Statute § 145.682. Although the Court has already recommended that Plaintiff's claims against Centurion be dismissed without prejudice, the Court will briefly address Centurion's motion to dismiss as an alternative basis for dismissal.

#### A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Centurion contends that only two paragraphs of the Amended Complaint mention Centurion, and there are no allegations about treatment provided by any specific Centurion provider. The Amended Complaint alleges that Centurion is a municipal corporation responsible for the medical personnel working at MCF-Stillwater. (Am. Compl. at 14.) Centurion allegedly failed to properly train and supervise nurses and doctors on addressing and combatting COVID-19. (*Id.*) As a result, Plaintiff contracted COVID-19. (*Id.*) Plaintiff further alleges a nurse was deliberately indifferent to his medical needs after he contracted COVID-19 by advising him to drink water, lie down, and rest. (*Id.*)

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere

13

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. For a claim to be facially plausible, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the factual allegations as true and views them most favorably to Plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

Plaintiff attempts to hold Centurion liable under a theory of respondeat superior. This doctrine is not available for § 1983 claims. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). An entity can be liable under § 1983 only when it directly caused a constitutional violation or the execution of its policy or custom caused a constitutional violation. *Id.* (quotation omitted). But Plaintiff does not allege the existence of Centurion policy or custom or that Centurion itself caused a constitutional violation. Therefore, Plaintiff's claims against Centurion should be dismissed.

Even if Plaintiff had pleaded the existence of a policy or custom, however, he has failed to state a claim for deliberate indifference to serious medical needs. To do so, Plaintiff must allege facts demonstrating that (1) he had an "objectively serious medical need[]," and (2) "prison officials actually knew of but deliberately disregarded" that need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Focusing on the second prong, Plaintiff has not alleged facts to support an inference that Centurion, a "municipal corporation," had any control over where inmates were housed or moved. Nor has Plaintiff alleged any conduct by a Centurion health provider; all of the named Defendants are DOC employees. Furthermore, an inmate's inability to socially distance or the spread of COVID-

14

19 within a prison does not mean prison officials deliberately disregarded the inmate's health of safety. *See Frohlich v. United States*, No. 20-CV-2692 (PJS/HB), 2021 WL 2531188, at *3 (D. Minn. June 21, 2021) (citing cases), *aff'd*, Case No. 21-2522 (8th Cir. Sept. 2, 2021). Finally, even assuming the unidentified nurse who told Plaintiff to drink water, lie down, and rest was a Centurion employee, Plaintiff has not alleged facts that would support an inference that the nurse's advice equated to criminal recklessness. *See Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). The Court therefore also recommends dismissal without prejudice of all claims against Centurion pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Dismissal for Lack of an Affidavit of Expert Review

Centurion faults Plaintiff for not submitting an affidavit of expert review, as required by Minnesota Statute § 145.682. This statute applies only to actions "alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort." Minn. Stat. § 145.682, subd. 2. The statute does not apply to claims brought pursuant to 42 U.S.C. § 1983. *Baxter-Knutson v. Brandt*, No. 14-cv-3796 (ADM/LIB), 2015 WL 4633590, at *6 (D. Minn. Aug. 3, 2015); *Parreant v. Schotzko*, No. 00-2014 (JRT/JGL), 2001 WL 1640137, at *4 (D. Minn. Sept. 30, 2001). Plaintiff brings only § 1983 claims in this case. Therefore, the Court does not recommend dismissal for lack of an affidavit of expert review.

### IV. Plaintiff's Motion for Temporary Restraining Order

Plaintiff seeks a temporary restraining order on several grounds. He first asserts that two correctional officers and at least one inmate tested positive for COVID-19 in July 2021,

and Defendants did not take proper precautions to separate those individuals from the general population. (Pl.'s TRO Mot. at 2, Dkt. No. 68.) Plaintiff also assets that several inmates who tested positive for COVID-19 were moved into his hall about that time. (*Id.*) Plaintiff next claims he was not seen by a physician in August 2021 for treatment of a skin condition.[4] (*Id.* at 3.) He seeks a temporary restraining order requiring Defendants to stop housing prisoners who have tested positive for COVID-19 with prisoners who have not tested positive, provide him with adequate medical care, permit greater access to the law library, stop instructing prison officials and staff members to stay away from Plaintiff because he filed this lawsuit, stop searching his cell and touching his legal papers, stop going through his mail, and not pack up and store his property. (*Id.* at 6–7.)

Plaintiff's motion should be denied for two reasons. First, Plaintiff has not exhausted his administrative remedies for any of the bases for injunctive relief asserted in the motion. "A plaintiff is required to exhaust administrative remedies before seeking a TRO or a preliminary injunction, just as he is required to do before seeking other remedies covered by the PLRA." *Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1092 (D. Colo. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

Second, none of the bases asserted and relief requested in Plaintiff's motion pertain to the claims alleged in this case. A motion for injunctive relief must not be based on new assertions or claims "that are entirely different from the claim raised and the relief requested in" the operative complaint. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.

---

[4] A sick call note indicates that Plaintiff had an appointment scheduled for treatment of that condition, however. (Pl's Ex. C, Dkt. No. 69.)

1994). Plaintiff's requests for injunctive relief concerning treatment of his skin condition, more law library access, and directives to staff about his cell, legal paper, mail, and property are utterly unrelated to his existing claims and requests for relief. His complaints about inmate housing and increased exposure to COVID-19 are based on events that occurred in July 2021, not the events giving rise to this lawsuit. Therefore, Plaintiff's motion for injunctive relief should be denied for this reason, as well.

## V.     Recommendation

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Centurion of Minnesota, LLC's Motion to Dismiss (Dkt. No. 30) be **GRANTED IN PART** and **DENIED IN PART**;

2. Defendants Minnesota Department of Corrections, Paul Schnell, Michelle Smith, Guy Bosch, Lisa Stenseth, Victor Wanchena, Andrew Reed, Brianna Erickson, Marrisa Williams, Monica Arons, Lynn Noll, Nanette Larson, and Tina Sneen's Motion for Summary Judgment (Dkt. No. 61) be **GRANTED** and all claims against these Defendants be **DISMISSED WITHOUT PREJUDICE**;

3. Plaintiff Nigeria Lee Harvey's Motion for Temporary Restraining Order (Dkt. No. 68) be **DENIED**;

4. Defendant Centurion of Minnesota, LLC's Motion for Joinder to the DOC Defendants' Motion for Summary Judgment (Dkt. No. 71) be **GRANTED** and all claims against Defendant Centurion be **DISMISSED WITHOUT**

**PREJUDICE** because Plaintiff did not exhaust his administrative remedies for his claims against Centurion;

5. Alternatively, all claims against Defendant Centurion be **DISMISSED WITHOUT PREJUDICE**, pursuant to Federal Rule of Civil Procedure 12(b)(6); and

6. **JUDGMENT BE ENTERED ACCORDINGLY**.

Date: October 14, 2021

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within **fourteen** days. A party may respond to objections within **fourteen** days after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).